UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:25-wi-0008 SRC ) |
| BRIDGET THEBEAU, | ) ) |
| Defendant. | ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Bridget Thebeau, represented by defense counsel Scott Rosenblum, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This plea agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this plea agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts One through Five of the Information, the United States agrees that no further federal prosecution will be brought against the defendant in this District relative to the conduct described in the Information, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than 10 days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts One through Five of the Information, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including, but not limited to, a money judgment in the amount of $3,821,152.73.

## 3. ELEMENTS:

As to Counts One through Five of the Information, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant voluntarily and intentionally devised a scheme to defraud another out of money or property, or to obtain money or property by means of material false representations or promises or by concealment of material facts;

*Two*, the defendant did so with the intent to defraud; and

*Three*, the defendant used, or caused to be used, an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning no later than in or around January 2015, and continuing through at least in or around March 2024, in the Eastern District of Missouri and elsewhere, the defendant, with the intent to defraud, voluntarily devised and intended to devise a scheme to defraud her employer (the "Company") out of money, and to obtain money from the Company by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and for the purpose of executing such scheme, knowingly caused to be used an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme.

More specifically, the defendant worked for the Company—which is a small family-owned business—for more than 20 years, from approximately September 2002 to approximately March 2024. As part of her job duties, the defendant was entrusted with direct access to the Company's customers and suppliers, including with authority to issue purchase orders to the Company's suppliers for products that the Company needed to fulfill orders from its customers.

Between in or around January 2015 and in or around March 2024, the defendant abused her position of trust at the Company by issuing more than 200 fraudulent purchase orders from the Company to certain of the Company's China-based suppliers, as part of an arrangement that she had with the China-based suppliers to share the fraudulent proceeds from the Company's payments for the fraudulent purchase orders. The purchase orders that the defendant issued were fraudulent in various ways, including because they inflated the per-unit price for the products ordered by the

Company and/or the quantity of products ordered by the Company, because they included fabricated charges for products that were not ordered by the Company and/or fabricated fees for services that were not provided to the Company, and/or because they were completely made up in that they were not tied to a product order that the Company received from one of its customers.

To conceal the fraudulent nature of the purchase orders and keep her scheme going, the defendant obtained fraudulent shipping labels and fraudulent bills of lading from the Company's China-based suppliers, created fraudulent invoices that she falsely claimed she had issued to the Company's customers, and provided the Company's owner and/or the Company's accountants with false information regarding, among other things, the specific invoices to which customers' payments should be applied and the outstanding amounts owed to the Company by its customers.

Despite knowing that the purchase orders were fraudulent, the defendant caused the Company to make wire payments totaling at least $3,821,152.73 from the Company's bank accounts to the China-based suppliers for the fraudulent purchase orders, which money the Company did not owe to those suppliers. After the China-based suppliers received the Company's money as a result of the fraudulent purchase orders, between in or around January 2015 and in or around March 2024, the suppliers shared more than $2 million of the fraudulent proceeds with the defendant by making over 200 domestic and international wire transfers to her Bank of America bank account ending in 5967 (the "Bank of America Account"), which had an accountholder address within the Eastern District of Missouri, including, but not limited to, the wire transfers set forth in the table at the top of the next page (page 5):

| Count | Approximate Date | Wire Description |
|---|---|---|
| 1 | September 23, 2015 | $5,000 wire transfer from China Merchants Bank in Hong Kong to Defendant Thebeau's Bank of America Account |
| 2 | February 28, 2017 | $10,287.50 wire transfer from China Merchants Bank in Hong Kong to Defendant Thebeau's Bank of America Account |
| 3 | September 12, 2019 | $9,000 wire transfer from Zhejiang Tailong Commercial Bank in Taizhou, Zhejiang to Defendant Thebeau's Bank of America Account |
| 4 | April 26, 2022 | $9,451.42 wire transfer from Oversea-Chinese Banking Corporation in Singapore to Defendant Thebeau's Bank of America Account |
| 5 | March 25, 2024 | $8,977.56 wire transfer from Oversea-Chinese Banking Corporation in Singapore to Defendant Thebeau's Bank of America Account |

In total, the defendant caused the Company to suffer an actual loss of at least $3,821,152.73, which has resulted in substantial financial hardship to the Company's owner, who is no longer able to retire due to the fraud scheme perpetrated by the defendant.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

### 6. U.S. SENTENCING GUIDELINES (2023 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a. **Chapter 2 Offense Conduct:**

(1) **Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 18 levels should be added pursuant to Section 2B1.1(b)(1)(J) because the loss exceeds $3.5 million but does not exceed $9.5 million.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(2)(A)(iii) because the offense resulted in substantial financial hardship to one or more victims.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(10)(C) because the offense involved sophisticated means and the defendant intentionally engaged in the conduct constituting sophisticated means.

b. **Chapter 3 Adjustments:**

(1) **Abuse of Position of Trust:** The parties agree that 2 levels should be added pursuant to Section 3B1.3 because the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense.

(2) **Acceptance of Responsibility:** The parties agree that 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If, subsequent to the taking of the guilty plea, the Government receives new evidence of statements or conduct by the defendant that it believes are inconsistent with the defendant's eligibility for this deduction, the Government may present said evidence to

the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 28.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties agree to waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea.

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments

7

(including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the plea agreement; (2) calculation of the defendant's Criminal History Category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

    **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

    **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime that the defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

    **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $500, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    **f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration, and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the Information.

The defendant agrees to the entry of an order of restitution in the amount of $3,821,152.73, which represents the amount of actual loss that she caused as the result of the offenses to which she is pleading guilty.

    **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

    The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $3,821,152.73. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any

forfeiture carried out in accordance with this plea agreement, including, but not limited to, that the defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands, and hereby waives her rights, including, but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence; and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel and, if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur, and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

11

and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact the defendant's immigration status or result in deportation. In particular, if any crime to which the defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the guilty plea.

### 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11. **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if the defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete, or untruthful information to the United States Probation Office, or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this plea agreement. The

Government may also, in its discretion, proceed with this plea agreement and may advocate for any sentencing position supported by the facts, including, but not limited to, obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this plea agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

5-15-25
Date

_____
JUSTIN M. LADENDORF
Assistant United States Attorney

5·15·25
Date

_____
BRIDGET THEBEAU
Defendant

5-15-15
Date

_____
SCOTT ROSENBLUM
Attorney for Defendant